**Providence Hospital
Emergency Department,
Washington, DC
2022697001**

| | | | |
|---|---|---|---|
| Patient: | ROGERS-BEY, LEONA P | MR#: | 170-048 |
| Physician: | Darnell M. Jones, PAC | Acct #: | 00505804559 |
| | | DOB: | 10/30/1961 |

### Aftercare Instructions for Bronchitis, Pneumonia, and Pleurisy

Bronchitis is an irritation of the lining of the larger breathing tubes leading to the lungs. The irritation can be caused by exposure to tobacco smoke, air pollution, or viral or bacterial infection. Patients with bronchitis are short of breath and cough up green or yellow material. These symptoms are usually worse in the evening and in wet weather.

Pneumonia is a viral, bacterial, or fungal infection of the small air tubes and sacs of the lungs. People who are exposed to tobacco smoke, have rib fractures or diabetes, are immunosuppressed, or abuse alcohol or drugs are more prone to developing pneumonia. Patients with pneumonia are short of breath, cough up green or yellow material, and may have chest pain and a fever. Other symptoms include vomiting, abdominal pain, and a headache.

Pleurisy is a swelling or irritation of the lining of the chest cavity and lungs. Patients with pneumonia, tumors, or trauma to the chest wall are more likely to develop pleurisy. Pleurisy causes sharp chest pain that is worse when breathing in.

What to do:
- Continue to cough. Coughing clears out the infection and opens the airways. Take a cough suppressant at night to allow rest; during waking hours take deep breaths and cough every hour.
- Drink lots of fluids, at least 10 to 12 cups per day.
- Humidify the air. If you use a humidifier, be sure it is clean and has fresh water every day. If you do not have a humidifier, sit in the bathroom with the door closed and the shower on. Allow the room to steam up and breathe the moist air for 30 minutes every few hours.
- Get lots of rest.
- Do not smoke. Avoid smoke exposure. Stay indoors if the air pollution is heavy.

When to call a doctor or return to the Emergency Department:
- Increasing shortness of breath
- Vomiting; inability to keep medications down
- Dizziness, weakness, or confusion
- No improvement in 48 to 72 hours or worsening of symptoms
- Fever greater than 101° F (38.3° C)

In the future:
- Stop smoking! Talk to your doctor or call the American Lung Association at 1-800-LUNG-USA or the American Cancer Society at 1-800-ACS-2345 for more information.
- Avoid secondhand smoke.
- Discuss getting a flu shot and pneumococcal pneumonia vaccine with your doctor if you have an underlying lung disease, you are over 60 years old, or you have other medical problems.

FILED

JUN 1 5 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

2q4

**Providence Hospital**
**Emergency Department,**
**Washington, DC**
**2022697001**

Patient:      ROGERS-BEY, LEONA P
Date:         07-Mar-2005
Physician:    Darnell M. Jones, PAC

---

## General Emergency Department Discharge Instructions

The exam and treatment you received in the Emergency Department were for an urgent problem and are not intended as complete care. It is important that you follow up with a doctor, nurse practitioner, or physician's assistant for ongoing care. If your symptoms become worse or you do not improve as expected and you are unable to reach your usual health care provider, you should return to the Emergency Department. We are available 24 hours a day.

You were treated in the Emergency Department by:
Darnell M. Jones, PAC

---

Your diagnosis is
Primary Diagnosis: Bronchitis - acute
Secondary Diagnosis: Infection - upper respiratory (URI)
Tertiary Diagnosis:

---

What to do:
- Follow the instructions on the additional sheets you were given:

- Please call as soon as possible to make an appointment:
  Disposition - Discharge from ED: The patient is discharged to home . Patient's condition is stable . The patient is to follow-up with Primary *Care Physician, in
  4 day(s) without fail The patient is to follow-up at Perry Family Health Center
  (202) 682-3840 in 4 day(s) without fail
  Disposition - Discharge from ED: The patient is discharged to home . Patient's condition is stable . The patient is to follow-up with Primary *Care Physician, in
  4 day(s) without fail The patient is to follow-up at Perry Family Health Center
  (202) 682-3840 in 4 day(s) without fail
- Take this sheet with you when you go to your follow-up visit.
- If you have any problem arranging the follow-up visit, contact the Emergency Department immediately.
- Take all medications as directed.

Studies done in the Emergency Department:

The emergency physician provided an on-the-spot interpretation of your x-rays and/or EKG. A specialist will do a final interpretation of these tests. If a change in your diagnosis or treatment is needed, we will contact you. It is critical that we have a current phone number for you.

- Call **269-7970** 48 hours before your follow-up appointment to arrange to pick up your x-rays.

- Culture results take 48 hours. The Emergency Department will contact you if the results require a change in your treatment. Do not call for results, in order to protect your privacy no results will be given over the phone.

Additional information or instructions:

**PRESCRIPTIONS GIVEN IN THE EMERGENCY DEPARTMENT:**
Flovent Inhaler 110 mcg; Thirteen (13) gms; Take two puffs twice daily
Albuterol (Proventil, Ventolin) Inhaler; Seventeen (17) gms; Take one to two puffs every four hours as needed for wheezing
Biaxin (clarithromycin) 500mg; Twenty (20); Take one twice daily for ten days. Stop for upset stomach or rash
Motrin 800mg; Twenty (20); Take one every eight hours

* * *If side effects develop, such as a rash, difficulty breathing, or a severe upset stomach,*
   *stop the medication and call your doctor or the Emergency Department.*


I, ROGERS-BEY, LEONA P, understand the instructions and will arrange for follow-up care.

_Mrs. Leona P. Bell Rogers-Bey_
Patient Signature

_____
Representative Signature

_____
Staff Signature

### Philip L. Mussenden, M.D.

2001 Benning Road, N.E.
Washington, D.C. 20002
(202) 396-4774

10/26/94

To Whom It May Concern:

This is to certify that Ms. Leona Bell, according to her history, suffers from bronchial asthma. It was stated that she has severe respiratory distress when attempting to complete spirometry (breathing volume) testing. Based on this history, it may be detrimental and against her best interests for Ms. Bell to take a breatholizer test.

Sincerely,
Philip L. Mussenden, MD

183

Ms. Leona A. Bell
202/396-4213

4 January 06

Dear Ms. P. Roberson:

I, LEONA P. BELL, have tried on numerous occassions to contact you on a matter of an appeal, stemming from a treatment assessment team (TAT) hearing on November 29, 2005. I was not afforded legal representation, the hearing went on even after I refuse to sign to any and all speculations of said team; I signed for an appeal which I have not heard anything thereof. My rights have been, and still are being grossly violated. I am requesting a schedule meet with you on this matter to exercise my administrative remedies so I can move on to the court system if deemed necessary.

Thank you for any and all assistance in this matter mentioned above.

CC: File
Court Exhibit

Sincerely submitted,
LEONA P. BELL
Leona P. Bell

273

HIPAA FORM 3

# GOVERNMENT OF THE DISTRICT OF COLUMBIA

## Department of Health

### Addiction Prevention and Recovery Administration

### Request for Release of Information / Authorization

**Purpose:** To document verification of the identity and authority of a person or entity you wish to disclose protected health information.

☒ Client          ☐ Third Party          ☐ Courts          ☐ Other_____

☐ **Payment:** Purpose is to obtain information regarding insurance coverage for substance abuse treatment that may be available under my insurance plan.

**Effective Date:** _1/10/06_          **Expiration Date:** _/ /_

**Section A: Client Information.**          **Identification Number:** _____

X Name: _Leona P Bell_

X Address: _314 50th St. N.E. #23_

X Telephone: _(202) 396 - 4213_    Fax: _____    E-mail: _____

Gender:    Male ☐    Female ☒          X DOB: _10/30/61_

Personal representatives signing on behalf of the individual must complete the following:

Personal Representative's Name: _____

Relationship to Individual: _____    Telephone: _____

**Section B: Recipient Information:** (Name and Address (if known) of Person or Entity to whom the Protected Health Information is to be disclosed.)

Name: _____

Address: _____

Telephone: _____    Fax: _____    E-mail: _____

**Protected Health Information to be Disclosed:** _pertinent medical information and rationale for discharge from program and to report results of re-entry committee decision to discharge program._

**Purpose of the Disclosure:** Describe the purpose for disclosing the protected health information, or attach a copy of any written request or information.
_To determine eligibility for re-entry for treatment_

_Kevra Lee_
_Program assistant_
_202-535-1691_

*1ʒ2*

**Addiction Prevention and Recovery Administration**
**Re-Entry Committee Hearing**
**Notification of Decision**

The Re-Entry Committee heard testimony from *Leona Bell* on
*Jan, 27, 2006* , 2005 regarding his/her dismissal from _____
          Date                                                                Program Name

The Committee reviewed all information regarding this case, and made the following decision:

_____The patient **IS** allowed to return to treatment program

___X___The patient **IS NOT** allowed to return to treatment program because

_____Patient gave conflicting accounts about the situation, which lead to his/her dismissal from program

_____Patient has an extensive history of belligerent/abusive behavior

_____Patient refuses to abide by guidelines and regulations set by program

_____Patient continues to engage in illegal activities that jeopardize the recovery efforts of other patients

_____Other (**please explain**)

_____

_____

**Recommendations:**

*Client is not eligible for re-admission to meth. maint until 5-30-06. Client has option of coming into Detox or going to private meth. program.*

The Committee has discussed its decision with *Leona Bell* and
                                                                                   Patient Name
He/she understands the Committee's ruling.

*Leona P. Bell*                                        *Deborah G. Hubb*
_____                    _____
Patient Signature                                    Re-Entry Committee Member

Government of the District of Columbia
Department of Health
Addiction Prevention and Recovery Administration

## PATIENT BILL OF RIGHTS

1. You must receive humane and dignified treatment at all times. You are entitled to be spoken to in a courteous and professional manner; staff may not curse or use humiliating language. You shall not be subjected to any form of physical abuse, sexual abuse, harassment of physical punishment. Sexual abuse or harassment may include any gestures, verbal or physical that makes reference to sexual acts or sexuality, or that objectify you sexually. You may not be subjected to psychological abuse, including humiliating, threatening and exploiting actions.

2. You shall not be excluded from participating in, denied benefits of, or otherwise subjected to discriminatory practices in the provisions of any care of services on the grounds of age, race, ethnicity, color, sex, sexual orientation, physical situation or handicapping condition, cultural orientation, sex, psychological characteristics, religion or national origin.

3. You have the right to appropriate and professional treatment based on an individualized plan of care involving family and significant others, when suitable. You have the right to receive services in a manner that is responsive to your unique characteristics, needs and abilities. You may request a change of counselor if you have no rapport with that counselor, providing that another counselor is available. If that request is denied, you may request a TAT and bring in persons of your choice to support your request.

4. You must be given information describing your treatment services and charges, and this information must be in language understandable to you. If you do not understand the written information for whatever reason, you have the right to oral clarification of the service or charge in language and terms that are understandable to you.

5. You have the right to consideration of your individuality as it relates to your social, religious and psychological well being. For example, special arrangements to enable you to observe your religious holidays will be attempted.

6. You have the right to a full explanation in understandable terms about the use of any potentially hazardous drug that may be prescribed for you. You must give your consent in writing prior to the use of potentially hazardous drugs.

7. Staff members responsible for patient treatment shall at all times wear staff identification badges.

8. No changes may be made on your treatment plan without your consent and participation. Treatment will not be undertaken without your consent, except in the limited circumstances in which persons are committed to legally imposed treatment (in which case consent to treatment is not entirely voluntary).

9. You shall have access to complete and current information in your chart concerning your condition, diagnosis, treatment and prognosis for your review. You may access and copy this information at a time and place convenient both to you and to staff. You have the right to copy your records when a copying machine is available; the cost will be 10¢ a page.

10. You may be transferred or discharged for therapeutic reasons, which shall include consideration of your welfare and/or that of other patients and staff, or as a result of an explicit judgment of noncompliance. You shall be given reasonable advance notice of any transfer or discharge, and this advance notice shall be documented in your clinical record.

11. You will be given a copy of your transfer and/or discharge no later than at the time of its formal initiation.

12. Schedules of services and times of staff availability for patient consultation will be pre-posted to maintain a reasonable continuity within daily programs.

13. You shall be treated with respectfulness and privacy in your treatment at all times. In accordance with federal confidentiality regulations, all clinical records will be treated with confidentiality. You will have the opportunity to approve or refuse the release of your records, in part or in their entirety, to any individual outside the agency, except as otherwise provided by law or in case of transfer to another health care facility. You will be told what items may or may not be disclosed without your authorization for release of information, as well as what areas may be covered by mandatory disclosure laws and regulations. Your confidentiality may be limited within the criminal justice setting or when providing services to someone who is a demonstrable risk to self or others.

Service Center: _____

Standard Form CL-FME-024
Rev. 09/02

## Diversion

Diversion or attempted diversion of methadone is forbidden. If a patient is found to have diverted to attempted to divert methadone, immediate dismissal will occur.

*No diversion ever Occurred, no decision of diversion was made, on decision document.*

## Loitering

Excessive time spent within or around the clinic while not engaged in constructive activity is prohibited.

## Off-Limit Areas

*See page 1 & 2.*

There will be no access to the 3rd floor at 1300 First Street, except where exceptions are made by staff as needed. Attendance is permitted at the 10:00 am Tuesday morning No Smoking class held in the Large Conference Room at 1300 First Street.

There will be no access to the nurse's station area , nor to any areas where medications may be stored.

## OTHER RULES OF CONDUCT

Disobeying the rules listed below will not lead to dismissal, but APRA encourages respect for their observance.

### Presence of Alcohol or Other Drugs

You are encouraged to report to treatment staff the presence of any illegal drugs or alcohol on or adjacent to the premises. If other patients are using or appear to be using, you should report this to the treatment staff.

### Smoking

No smoking is allowed except where so designated.  No smoking is allowed in any APRA facility.  Also, smoking is not allowed in the front of 1300 First Street; smoking is only

DC CODE § 3-1209.04, Addiction counselor.                                    **Page 1**

**\*4605 DC ST § 3-1209.04**

**Formerly cited as DC ST 1981 § 2-3309.4**

**DISTRICT OF COLUMBIA
OFFICIAL CODE 2001
EDITION
DIVISION I. GOVERNMENT
OF DISTRICT.
TITLE 3. DISTRICT OF
COLUMBIA BOARDS AND
COMMISSIONS.
SUBTITLE I. GENERAL.
CHAPTER 12. HEALTH
OCCUPATIONS BOARDS.
UNIT A. GENERAL.
SUBCHAPTER IX. RELATED
OCCUPATIONS;
REGISTRATION
REQUIREMENTS;
PROHIBITED ACTIONS.**

*Current through October 2, 2001*

**§ 3-1209.04. Addiction counselor.**

(a) For the purposes of this section, the term "addiction counselor" means a person who possesses and utilizes a unique knowledge and skill base to assist (i) substance abusers; (ii) a person or group affected by a problem related to substance abuse; or (iii) the public for whom the prevention of substance abuse is a primary concern. This knowledge and skill base may be attained through a combination of specialized training, education, supervised work experience, and life experience.

(b) A person who is engaged as an addiction counselor in the District shall register with the Mayor, renew the registration as required by rule, and pay the required registration fee established by the Mayor.

(c) A person registered to practice as an addiction counselor may assist substance abusers, persons affected by problems related to substance abuse, and the public.

(d) The Mayor, in accordance with the provisions of subchapter I of Chapter 5 of Title 2, shall issue rules setting forth the required standards for education and experience needed to qualify as a registered addiction counselor. The Mayor may adopt the standards of a recognized professional association of addiction counselors.

**CREDIT(S)**

**2001 Main Volume**

*(Mar. 25, 1986, D.C. Law 6-99, § 904, as added July 22, 1992, D.C. Law 9-126, § 2(h), 39 DCR 3824.)*

<General Materials (GM) - References, Annotations, or Tables>

**HISTORICAL NOTES**

**HISTORICAL AND STATUTORY NOTES**

Prior Codifications
   1981 Ed., § 2-3309.4.

Legislative History of Laws
   For legislative history of D.C. Law 9-126, see Historical and Statutory Notes following § 3-1202.13.

Copyright (c) West Group 2002 No claim to original U.S. Govt. works

DC CODE § 7-3001, Legislative findings.

**\*8051 DC ST § 7-3001**

# DISTRICT OF COLUMBIA OFFICIAL CODE 2001 EDITION
# DIVISION I. GOVERNMENT OF DISTRICT.
# TITLE 7. HUMAN HEALTH CARE AND SAFETY.
# SUBTITLE L. SUBSTANCE ABUSE.
# CHAPTER 30. CHOICE IN DRUG TREATMENT.

*Current through October 2, 2001*

## § 7-3001. Legislative findings.

(a) The current system of treating substance abusers in the District does not serve the needs of the community. There are between 65,000 and 100,000 persons in the District who need treatment for substance abuse. In the first 11 months of FY1999, the Addiction Prevention and Recovery Administration ("APRA") served only 5,700 clients. No statistics are available regarding whether these individuals were successfully treated. Among other things, too few detoxification services slots create a bottleneck in its treatment programs.

(b) The financial costs associated with substance abuse are enormous. According to some estimates, these costs probably exceed $1 billion in the District for health care expenditures, premature death, impaired productivity, motor vehicle crashes, crime, and social welfare cases due to alcohol and drug abuse. For every $1 spent on substance abuse treatment an average of $7 is saved in costs associated with criminal justice, health care and social services.

(c) Even more critical are the tragic human costs associated with substance abuse. Substance abuse is a major factor in crime, domestic violence, child abuse, joblessness, emergency room visits, AIDS cases, and public health in the District.

(d) In the District, the human costs are pervasive and devastating. Sixty-seven percent of recent offenders in the District tested positive in at least half of all drug tests. Similarly, 69% of APRA's clients have an arrest record. Eighty-five percent of child protection cases, 75% of foster care cases, and 35% of AIDS cases are related to drug abuse. Moreover, one in 7 mothers delivering babies test positive for drug use as well; 38% of emergency room visit patients are under the influence of alcohol. Finally, up to 50% of perpetrators of domestic violence have substance abuse problems.

(e) Access to meaningful treatment is clearly a major hurdle to recovery. Seventy-nine percent of APRA's clients were unemployed and had no insurance. Importantly, while 19.2% of APRA's clients are eligible for Medicaid, APRA does not access Medicaid dollars for outpatient and residential treatment services. This oversight results is the loss of millions of dollars for such services.

**\*8052** (f) The existing programs offered by APRA are insufficient. Sixty percent of substance abusers have psychiatric disorders, but only a fraction of those receive treatment. The Latino community is underserved because of the lack of bilingual residential treatment programs. Additionally, existing services fail to meet the treatment needs of youth, the elderly, pregnant and parenting women, and the disabled.

### CREDIT(S)

#### 2001 Main Volume

*(July 18, 2000, D.C. Law 13-146, § 2, 47 DCR 4350.)*

<General Materials (GM) - References, Annotations, or Tables>

### HISTORICAL NOTES

#### HISTORICAL AND STATUTORY NOTES

Legislative History of Laws

Copyright (c) West Group 2002 No claim to original U.S. Govt. works

DC CODE § 7-3001, Legislative findings.                                                  **Page 2**

Law 13-146, the "Choice in Drug Treatment Act of 2000," was introduced in Council and assigned Bill No. 13-405, which was referred to the Committee on Human Services. The Bill was adopted on first and second readings on March 7, 2000, and April 4, 2000, respectively. Signed by the Mayor on April 20, 2000, it was assigned Act No. 13-329 and transmitted to both Houses of Congress for its review. D.C. Law 13-146 became effective on July 18, 2000.

Copyright (c) West Group 2002 No claim to original U.S. Govt. works

DC CODE § 7-3002, Definitions.                                      **Page 1**

\*8053 DC ST § 7-3002

# DISTRICT OF COLUMBIA
# OFFICIAL CODE 2001
# EDITION
# DIVISION I. GOVERNMENT
# OF DISTRICT.
# TITLE 7. HUMAN HEALTH
# CARE AND SAFETY.
# SUBTITLE L. SUBSTANCE
# ABUSE.
# CHAPTER 30. CHOICE IN
# DRUG TREATMENT.

*Current through October 2, 2001*

## § 7-3002. Definitions.

For the purposes of this chapter, the term:

(1) "Addiction Prevention and Recovery Administration" ("APRA") means the agency or the successor agency within the Department of Health responsible for administering substance abuse prevention and treatment services.

(2) "Aftercare plan" means the services or other planned activities designed to sustain therapeutic gains and promote further recovery of the client with regard to the issues relating to substance abuse.

(3) "Certification" means the process of ensuring that standards of care are met for the operation of a substance abuse treatment facility or program in the District of Columbia as described by regulation.

(4) "Client" means a person who is afflicted with and seeking to recover from substance abuse and has been selected for participation in the Drug Treatment Choice Program.

(5) "District" means the District of Columbia.

(6) "Drug" means any of the controlled substances enumerated in §§ 48-902.04, 48-902.06, 48-902.08, 48-902.10, or 48-902.12.

(7) "Dual diagnosis" means persons with the concurrent diagnoses of substance abuse and mental disease or disorder.

(8) "Intake screening and assessment" means the process performed by a qualified substance abuse counselor for the collection of relevant information about an applicant in order to determine eligibility for rehabilitation program services and the development of an initial treatment plan and any necessary referral.

(9) "Qualified substance abuse counselor" means a person who:

(A) Has received certification or credentials in substance abuse from the American Medical Association, the American Society for Addiction Medicine, the Nurses Professional Association, a state's affiliate of the National Alcohol and Drug Counselors' Association, or a state's affiliate of the International Certification Reciprocity Consortium for Alcohol and Other Drugs of Abuse ("ICRC/AODA");

(B) Has registered with the District of Columbia Board of Professional Counseling as a Registered Addiction Professional; and

\*8054 (C) Completes 40 hours of continuing education every two years.

(10) "Rehabilitation plan" means the course of action to be taken to address the issues relating to substance abuse that were identified in the intake screening and assessment, including frequency of services, type of personnel providing services, monitoring of client progress, and plan revision.

(11) "Resident" means any person who lives in the District voluntarily, not for a temporary purpose, and has no present intention of removing himself or herself from the District. Temporary absence from the District, with subsequent returns to the District, or intent to return when the purposes of the absence have been accomplished shall not interrupt continuity of residence. For the purpose of this chapter, whether a person is a "resident" shall not depend upon the reason that the individual entered the District except that it may bear on whether the person is in the District for a temporary purpose.

Copyright (c) West Group 2002 No claim to original U.S. Govt. works

DC CODE § 7-3002, Definitions.

(12) "Substance abuse" means a pattern of pathological use of a drug or alcohol that causes impairment in social or occupational functioning or produces physiological dependency evidenced by physical tolerance or physical symptoms when the drug or alcohol is not used.

(13) "Treatment provider" means an entity, a facility, or a program that has been certified by APRA to be responsible for the delivery of substance abuse detoxification, rehabilitation, and aftercare services to an identified target population.

## CREDIT(S)

### 2001 Main Volume

*(July 18, 2000, D.C. Law 13-146, § 3, 47 DCR 4350.)*

<General Materials (GM) - References, Annotations, or Tables>

### HISTORICAL NOTES

### HISTORICAL AND STATUTORY NOTES

Legislative History of Laws
    For Law 13-146, see notes following § 7-3001.

Copyright (c) West Group 2002 No claim to original U.S. Govt. works

DC CODE § 7-3003, Establishment of the Drug Treatment Choice Program; purpose.          **Page 1**

**\*8055 DC ST § 7-3003**

## DISTRICT OF COLUMBIA OFFICIAL CODE 2001 EDITION
### DIVISION I. GOVERNMENT OF DISTRICT.
### TITLE 7. HUMAN HEALTH CARE AND SAFETY.
### SUBTITLE L. SUBSTANCE ABUSE.
### CHAPTER 30. CHOICE IN DRUG TREATMENT.

*Current through October 2, 2001*

§ **7-3003. Establishment of the Drug Treatment Choice Program; purpose.**

There is established the Drug Treatment Choice Program ("Program"). The purpose of the Program is to provide District residents with access to substance abuse rehabilitation and aftercare plans at the treatment provider of their choice in consultation with a qualified substance abuse counselor, and subject to the availability of funds in the Addiction Recovery Fund.

### CREDIT(S)

**2001 Main Volume**

*(July 18, 2000, D.C. Law 13-146, § 4, 47 DCR 4350.)*

<General Materials (GM) - References, Annotations, or Tables>

### HISTORICAL NOTES

### HISTORICAL AND STATUTORY NOTES

Legislative History of Laws
   For Law 13-146, see notes following § 7-3001.

Copyright (c) West Group 2002 No claim to original U.S. Govt. works

*8056 DC ST § 7-3004

# DISTRICT OF COLUMBIA OFFICIAL CODE 2001 EDITION
## DIVISION I. GOVERNMENT OF DISTRICT.
## TITLE 7. HUMAN HEALTH CARE AND SAFETY.
## SUBTITLE L. SUBSTANCE ABUSE.
## CHAPTER 30. CHOICE IN DRUG TREATMENT.

*Current through October 2, 2001*

## § 7-3004. Establishment of the Addiction Recovery Fund.

(a) There is established the Addiction Recovery Fund ("Fund"). The Fund shall be comprised of general revenue funds appropriated by a line item in the budget submitted pursuant to § 1-204.46, and authorized by Congress in an appropriations act for the purpose of the Drug Treatment Choice Program. The Mayor shall, subject to authorization by Congress in an appropriations act, deposit in the Fund any and all other funds received on behalf of the Fund for the purpose of the Drug Treatment Choice Program.

(b) The Fund shall be used only for payments directly to treatment providers. The Fund shall be the sole source for payments to treatment providers under the Drug Treatment Choice Program. APRA shall administer the Drug Treatment Choice Program and the Fund from APRA's appropriated operating budget.

(c) Within 18 months of July 18, 2000, APRA shall develop a plan to incorporate all APRA funding for substance abuse treatment services into the Fund. APRA may propose to continue then existing contracts and grants upon a finding that the Program would not serve the specific needs of a particular clientele or group.

(d) The plan developed by APRA pursuant to subsection (c) of this section shall be submitted by the Mayor to the Council for a 45-day period of review, excluding Saturdays, Sundays, legal holidays, and days of Council recess. If the Council does not approve or disapprove the proposed plan, in whole or in part, by resolution within this 45-day review period, the proposed plan shall be deemed approved.

### CREDIT(S)

#### 2001 Main Volume

*(July 18, 2000, D.C. Law 13-146, § 5, 47 DCR 4350.)*

<General Materials (GM) - References, Annotations, or Tables>

### HISTORICAL NOTES

### HISTORICAL AND STATUTORY NOTES

Legislative History of Laws
   For Law 13-146, see notes following § 7-3001.

Copyright (c) West Group 2002 No claim to original U.S. Govt. works

*8057 DC ST § 7-3005

# DISTRICT OF COLUMBIA OFFICIAL CODE 2001 EDITION
## DIVISION I. GOVERNMENT OF DISTRICT.
## TITLE 7. HUMAN HEALTH CARE AND SAFETY.
## SUBTITLE L. SUBSTANCE ABUSE.
## CHAPTER 30. CHOICE IN DRUG TREATMENT.

*Current through October 2, 2001*

## § 7-3005. Administration of the Drug Treatment Choice Program and Addiction Recovery Fund.

APRA shall administer the Program and Fund by:

(1) Performing certification of treatment providers;

(2) Creating standardized intake forms and procedures to be utilized by APRA and treatment providers;

(3) Monitoring intake screening and assessments performed by qualified substance abuse counselors located within the APRA or the treatment providers;

(4) Determining whether the applicant is eligible to participate in the Program following the intake screening and assessment;

(5) Requiring the persons performing the intake screening and assessment, after determining eligibility, to share with the client the entire spectrum of treatment providers and to inform the client of his or her right to select the treatment provider of his or her choice in consultation with a qualified substance abuse counselor;

(6) Reviewing rehabilitation and aftercare plans, including estimated costs, submitted by treatment providers;

(7) Providing payment directly to treatment providers for services rendered at such times as established between APRA and the treatment provider; and

(8) Monitoring the rehabilitation and aftercare plans and the quality of the services rendered by the treatment providers.

### CREDIT(S)

### 2001 Main Volume

*(July 18, 2000, D.C. Law 13-146, § 6, 47 DCR 4350.)*

<General Materials (GM) - References, Annotations, or Tables>

### HISTORICAL NOTES

### HISTORICAL AND STATUTORY NOTES

Legislative History of Laws
  For Law 13-146, see notes following § 7-3001.

Copyright (c) West Group 2002 No claim to original U.S. Govt. works

DC CODE § 7-3007, Residency and insurance requirements.                     **Page 1**

**\*8059 DC ST § 7-3007**

# DISTRICT OF COLUMBIA OFFICIAL CODE 2001 EDITION
## DIVISION I. GOVERNMENT OF DISTRICT.
## TITLE 7. HUMAN HEALTH CARE AND SAFETY.
## SUBTITLE L. SUBSTANCE ABUSE.
## CHAPTER 30. CHOICE IN DRUG TREATMENT.

*Current through October 2, 2001*

§ **7-3007. Residency and insurance requirements.**

In addition to other eligibility requirements established pursuant to this chapter, a prospective client shall be a District resident and not have insurance benefits available for substance abuse treatment. A client shall continue to be a resident while participating in the Program.

### CREDIT(S)

#### 2001 Main Volume

*(July 18, 2000, D.C. Law 13-146, § 8, 47 DCR 4350.)*

<General Materials (GM) - References, Annotations, or Tables>

### HISTORICAL NOTES

#### HISTORICAL AND STATUTORY NOTES

Legislative History of Laws
  For Law 13-146, see notes following § 7-3001.

Copyright (c) West Group 2002 No claim to original U.S. Govt. works

**\*8060 DC ST § 7-3008**

# DISTRICT OF COLUMBIA OFFICIAL CODE 2001 EDITION
## DIVISION I. GOVERNMENT OF DISTRICT.
## TITLE 7. HUMAN HEALTH CARE AND SAFETY.
## SUBTITLE L. SUBSTANCE ABUSE.
## CHAPTER 30. CHOICE IN DRUG TREATMENT.

*Current through October 2, 2001*

## § 7-3008. Benefits.

(a) APRA shall formulate guidelines that give priority for enrollment in the Program to any eligible minor, pregnant woman, or the parent, guardian, or other person who has legal custody of a minor.

(b) A client with no dependent children shall receive a maximum of up to $10,000 per year, subject to the availability of funds in the Fund. A client with a dependent child or children shall receive a maximum of up to $25,000 per year, subject to the availability of funds in the Fund.

(c) By waiver, approved by the Administrator of APRA, expenditures in excess of the maximum amounts stated in subsection (b) of this section may be authorized where good cause is shown.

(d) Nothing in this chapter shall be construed to create an entitlement to substance abuse treatment during any fiscal year if no funds remain available to the District government under a District or federal appropriation that has been enacted for the specific purpose of providing substance abuse treatment services.

### CREDIT(S)

#### 2001 Main Volume

*(July 18, 2000, D.C. Law 13-146, § 9, 47 DCR 4350.)*

<General Materials (GM) - References, Annotations, or Tables>

### HISTORICAL NOTES

### HISTORICAL AND STATUTORY NOTES

Legislative History of Laws
  For Law 13-146, see notes following § 7-3001.

Copyright (c) West Group 2002 No claim to original U.S. Govt. works

DC CODE § 7-3009, Certification of treatment providers.

*8061 DC ST § 7-3009

# DISTRICT OF COLUMBIA OFFICIAL CODE 2001 EDITION
## DIVISION I. GOVERNMENT OF DISTRICT.
### TITLE 7. HUMAN HEALTH CARE AND SAFETY.
### SUBTITLE L. SUBSTANCE ABUSE.
### CHAPTER 30. CHOICE IN DRUG TREATMENT.

*Current through October 2, 2001*

## § 7-3009. Certification of treatment providers.

(a) In order to participate as a treatment provider in the Program, application shall be made to APRA for certification, the cost of which shall be paid by the treatment provider. Only Program-approved treatment providers shall be eligible to receive payments from the Fund.

(b)(1) Within 60 days after July 18, 2000, APRA shall submit to the Council for a 60-day period of review, excluding Saturdays, Sundays, legal holidays and days of Council recess, the specific criteria to be used in certifying treatment providers. If the Council does not approve or disapprove, in whole or in part, by resolution within the 60-day period of review, the criteria shall be deemed approved.

(2) At a minimum, the criteria shall require a demonstrated success in the rehabilitation services for which the treatment provider seeks certification and the financial viability of the treatment provider to perform the services for which it seeks certification. In addition, APRA may require the treatment provider to post a surety bond of up to $50,000 in order to participate in the Program.

(c) APRA shall make every effort to seek out for certification a diversity of treatment providers who offer rehabilitation services to such targeted populations as African Americans, Latinos, Asians, offenders and ex-offenders, the elderly, persons with custody of minor children, gays, lesbians, bisexuals, transgenders, persons with HIV/AIDS, individuals with dual diagnoses, and the disabled.

(d) APRA shall have the authority to revoke or suspend certification in cases of fraud, financial abuse, client abuse, improper clinical practices, improper practices by staff, or for other good cause.

(e) Except as provided in subsection (f) of this section, each treatment provider shall apply for recertification annually.

(f) If, after 2 successive recertifications, a treatment provider is found by APRA to be in substantial compliance with certification standards, annual recertification shall not be required for as long as a treatment provider remains in substantial compliance.

*8062 (g) Additional certification of a treatment provider shall be required if the scope of its services changes.

### CREDIT(S)

#### 2001 Main Volume

*(July 18, 2000, D.C. Law 13-146, § 10, 47 DCR 4350.)*

<General Materials (GM) - References, Annotations, or Tables>

### HISTORICAL NOTES

### HISTORICAL AND STATUTORY NOTES

Legislative History of Laws
  For Law 13-146, see notes following § 7-3001.

Copyright (c) West Group 2002 No claim to original U.S. Govt. works

\*8063 DC ST § 7-3010

# DISTRICT OF COLUMBIA OFFICIAL CODE 2001 EDITION
# DIVISION I. GOVERNMENT OF DISTRICT.
## TITLE 7. HUMAN HEALTH CARE AND SAFETY.
## SUBTITLE L. SUBSTANCE ABUSE.
## CHAPTER 30. CHOICE IN DRUG TREATMENT.

*Current through October 2, 2001*

### § 7-3010. Quality assurance for treatment providers.

Prior to implementing the Program, APRA shall:

(1) Establish a Quality Assurance Division staffed with personnel to monitor the performance and quality of services of treatment providers;

(2) Train quality assurance staff on the tools and protocols used to effectively monitor treatment providers; and

(3) Develop policies, procedures, and instruments to measure qualitative and quantitative outcomes of treatment services.

### CREDIT(S)

**2001 Main Volume**

*(July 18, 2000, D.C. Law 13-146, § 11, 47 DCR 4350.)*

<General Materials (GM) - References, Annotations, or Tables>

### HISTORICAL NOTES

### HISTORICAL AND STATUTORY NOTES

Legislative History of Laws
  For Law 13-146, see notes following § 7-3001.

Copyright (c) West Group 2002 No claim to original U.S. Govt. works

DC CODE § 7-3011, Aftercare plan.

**\*8064 DC ST § 7-3011**

# DISTRICT OF COLUMBIA OFFICIAL CODE 2001 EDITION
## DIVISION I. GOVERNMENT OF DISTRICT.
## TITLE 7. HUMAN HEALTH CARE AND SAFETY.
## SUBTITLE L. SUBSTANCE ABUSE.
## CHAPTER 30. CHOICE IN DRUG TREATMENT.

*Current through October 2, 2001*

## § 7-3011. Aftercare plan.

(a) Prior to discharge from the rehabilitation plan, an aftercare plan shall be developed by the treatment provider in consultation with the client. The aftercare plan shall include periodic interviews by the treatment provider with the client within one month, three months, and six months after discharge and include procedures for collecting information about outcomes of care from the client.

(b) APRA shall, at the end of each fiscal year, compile success rates for treatment providers and submit them to the Council by November 1 of each year.

### CREDIT(S)

**2001 Main Volume**

*(July 18, 2000, D.C. Law 13-146, § 12, 47 DCR 4350.)*

<General Materials (GM) - References, Annotations, or Tables>

### HISTORICAL NOTES

### HISTORICAL AND STATUTORY NOTES

Legislative History of Laws
  For Law 13-146, see notes following § 7-3001.

Copyright (c) West Group 2002 No claim to original U.S. Govt. works

DC CODE § 7-3013, Program evaluation.

**\*8066 DC ST § 7-3013**

## DISTRICT OF COLUMBIA OFFICIAL CODE 2001 EDITION
## DIVISION I. GOVERNMENT OF DISTRICT.
## TITLE 7. HUMAN HEALTH CARE AND SAFETY.
## SUBTITLE L. SUBSTANCE ABUSE.
## CHAPTER 30. CHOICE IN DRUG TREATMENT.

*Current through October 2, 2001*

## § 7-3013. Program evaluation.

APRA shall review the success of the Program and perform a comprehensive evaluation of all APRA substance abuse treatment programs and submit its report to the Council by January 15, 2003.

### CREDIT(S)

**2001 Main Volume**

*(July 18, 2000, D.C. Law 13-146, § 14, 47 DCR 4350.)*

<General Materials (GM) - References, Annotations, or Tables>

### HISTORICAL NOTES

### HISTORICAL AND STATUTORY NOTES

Legislative History of Laws
For Law 13-146, see notes following § 7-3001.

Copyright (c) West Group 2002 No claim to original U.S. Govt. works

**\*8067 DC ST § 7-3014**

# DISTRICT OF COLUMBIA OFFICIAL CODE 2001 EDITION DIVISION I. GOVERNMENT OF DISTRICT. TITLE 7. HUMAN HEALTH CARE AND SAFETY. SUBTITLE L. SUBSTANCE ABUSE. CHAPTER 30. CHOICE IN DRUG TREATMENT.

*Current through October 2, 2001*

## § 7-3014. Drug Treatment Choice Advisory Commission.

(a)(1) There is established a Drug Treatment Choice Advisory Commission ("Commission") with the purpose of advising the Council and the Mayor on the implementation of the Program and recommending improvements to its infrastructure.

(2) The Commission shall consider approaches to reduce barriers to meaningful choice in drug treatment by working closely with APRA:

(A) To establish clear access to services;

(B) To provide for linkages among providers and other support services;

(C) To assure that services are culturally competent and sensitive;

(D) To assure that the delivery of services adjusts to changing needs and emerging issues; and

(E) To provide any other assistance to APRA that may be required.

(3) The Commission shall submit its recommendations to the Council and the Mayor in the form of a report, with specific steps for implementing its recommendations, within 180 days after July 18, 2000, and every six months thereafter.

(b)(1) The Commission shall be composed of 11 members as follows:

(A) Three representatives appointed by the Mayor; and

(B) Eight members appointed by the Council for a term of 3 years, including 2 members representing treatment providers, 2 members representing clients, and 1 member each from the housing sector, the employment sector, human services groups, and the medical profession.

(2) The Council appointments shall be made within 60 days of July 18, 2000. A vacancy shall be filled in the same way the initial appointment was made.

(3) The Chairperson of the Commission shall be appointed by the Council from among the members of the Commission. This paragraph shall expire one year after the date of the initial appointment.

(4) Each member shall serve without compensation.

(c) The Chairperson, or designee, shall convene all meetings of the Commission. Six members of the Commission shall constitute a quorum.

(d) The Commission shall have the authority to create and operate under its own rules of procedure, consistent with this chapter and subchapter I of Chapter 5 of Title 2.

**\*8068** (e) All recommendations and reports prepared and submitted by the Commission shall be a matter of public record.

(f) The Commission shall have the authority to request directly from each department, agency, or instrumentality of the District government and each department, agency, or instrumentality is hereby authorized to furnish directly to the Commission upon its request, any information deemed necessary by the Commission to carry out its functions under this chapter.

(g) The Commission is authorized to use space

Copyright (c) West Group 2002 No claim to original U.S. Govt. works

DC CODE § 7-3014, Drug Treatment Choice Advisory Commission.    **Page 2**

and supplies owned or rented by the District government.

(h) Funding for the Commission's operations shall be provided by annual appropriations and private sector assistance.

## CREDIT(S)

### 2001 Main Volume

*(July 18, 2000, D.C. Law 13-146, § 15, 47 DCR 4350.)*

<General Materials (GM) - References, Annotations, or Tables>

### HISTORICAL NOTES

### HISTORICAL AND STATUTORY NOTES

Legislative History of Laws
  For Law 13-146, see notes following § 7-3001.

Copyright (c) West Group 2002 No claim to original U.S. Govt. works

DC CODE § 24-713, Care and treatment of drug users;  authority of Surgeon General.                    **Page 1**

**\*17199 DC ST § 24-713**

**Formerly cited as DC ST 1981 § 24-613**

**DISTRICT OF COLUMBIA
OFFICIAL CODE 2001
EDITION
DIVISION IV. CRIMINAL
LAW AND PROCEDURE
AND PRISONERS.
TITLE 24. PRISONERS AND
THEIR TREATMENT.
CHAPTER 7.
REHABILITATION OF
USERS OF NARCOTICS.**

*Current through October 2, 2001*

## § 24-713. Care and treatment of drug users; authority of Surgeon General.

(a) The Surgeon General is authorized to provide for the confinement, care, protection, treatment, and discipline of persons addicted to the use of habit-forming narcotic drugs who are civilly committed to treatment under the Narcotic Addict Rehabilitation Act of 1966, addicts who voluntarily submit themselves for treatment, and addicts and other persons with drug abuse and drug dependence problems convicted of offenses against the United States and who are not sentenced to treatment under the Narcotic Addict Rehabilitation Act of 1966, including persons convicted by general courts-martial and consular courts.    Such care and treatment shall be provided at hospitals of the Public Health Service especially equipped for the accommodation of such patients or elsewhere where authorized under other provisions of law, and shall be designed to rehabilitate such persons, to restore them to health, and, where necessary, to train them to be self-supporting and self-reliant;  but nothing in this section or in §§ 257 to 261a of Title 42, United States Code, shall be construed to limit the authority of the Surgeon General under other provisions of law to provide for the conditional release of patients and for aftercare under supervision.  In carrying

out this subsection, the Secretary shall establish in each hospital and other appropriate medical facility of the Service a treatment and rehabilitation program for drug addicts and other persons with drug abuse and drug dependence problems who are in the area served by such hospital or other facility;    except that the requirement of this sentence shall not apply in the case of any such hospital or other facility with respect to which the Secretary determines that there is not sufficient need for such a program in such hospital or other facility.

(b) Upon the admittance to, and departure from, a hospital of the Service of a person who voluntarily submitted himself for treatment pursuant to the provisions of this section, and who at the time of his admittance to such hospital was a resident of the District of Columbia, the Surgeon General shall furnish to the Mayor of the District of Columbia or his designated agent, the name, address, and such other pertinent information as may be useful in the rehabilitation to society of such person.

**\*17200** (c) The Secretary may enter into agreements with the Administrator of Veterans' Affairs, the Secretary of Defense, and the head of any other department or agency of the government under which agreements hospitals and other appropriate medical facilities of the Service may be used in treatment and rehabilitation programs provided by such department or agency for drug addicts and other persons with drug abuse and other drug dependence problems who are in areas served by such hospitals or other facilities.

### CREDIT(S)

#### 2001 Main Volume

*(July 1, 1944, 58 Stat. 698, ch. 373, title III, § 341;  May 8, 1954, 68 Stat. 80, ch. 195, § 3;  July 24, 1956, 70 Stat. 622, ch. 676, title III, § 302(a);  Nov. 8, 1966, 80 Stat. 1449, Pub. L. 89-793, title VI, § 601;  Oct. 27, 1970, 84 Stat. 1240, Pub. L. 91-513, title I, § 2(a)(1);  Mar. 21, 1972, 86 Stat. 77, Pub. L. 92-255, § 402;  Oct. 12, 1984, 98 Stat. 1837, Pub. L. 98-473, § 232(a).)*

<General Materials (GM) - References,

Copyright (c) West Group 2002 No claim to original U.S. Govt. works

DC CODE § 24-713, Care and treatment of drug users; authority of Surgeon General.                    **Page 2**

Annotations, or Tables>

### HISTORICAL NOTES

### HISTORICAL AND STATUTORY NOTES

Prior Codifications
   1981 Ed., § 24-613.

   1973 Ed., § 24-613.

References in Text
   The Narcotic Addict Rehabilitation Act of 1966, referred to in subsection (a) of this section, is codified in 18 U.S.C. §§ 4251 to 4255, 28 U.S.C.§§ 2901 to 2906, and 42 U.S.C. §§ 3411 to 3426, 3441.

   18 U.S.C. §§ 4251 to 4255 were repealed by Pub. L. 98-473, title II,§ 218(a)(6), 98 Stat. 2027 effective November 1, 1987 except that the sections remain applicable for five years to individuals who committed offense or acts prior to November 1, 1987.

Change in Government
   This section originated at a time when local government powers were delegated to a Board of Commissioners of the District of Columbia (see Acts Relating to the Establishment of the District of Columbia and its Various Forms of Governmental Organization in Volume 1). Section 401 of Reorganization Plan No. 3 of 1967 (see Reorganization Plans in Volume 1) transferred all of the functions of the Board of Commissioners under this section to a single Commissioner. The District of Columbia Self-Government and Governmental Reorganization Act, 87 Stat. 818, § 711 (D.C. Code, § 1-207.11), abolished the District of Columbia Council and the Office of Commissioner of the District of Columbia. These branches of government were replaced by the Council of the District of Columbia and the Office of Mayor of the District of Columbia, respectively. Accordingly, and also pursuant to § 714(a) of such Act (D.C. Code, § 1-207.14(a)), appropriate changes in terminology were made in this section.

*17201 Transfer of Functions
   All functions of Public Health Service, of the Surgeon General of the Public Health Service, and of all other officers and employees of the Public Health Service, and all functions of all agencies of or in the Public Health Service were transferred to the Secretary of Health, Education, and Welfare by 1966 Reorganization Plan No. 3, 80 Stat. 1610. The functions of the Department of Health, Education, and Welfare were transferred to the Department of Health and Human Services by the Act of October 17, 1979, 93 Stat. 695, Pub. L. 96-88,§ 509.

### REFERENCES

### CROSS REFERENCES

### Section References

This section is referred to in § 24-715.

### LIBRARY REFERENCES

Key Numbers
   Chemical Dependents ☜➡■
   Westlaw Key Number Search: 76ak22.

Encyclopedias
   C.J.S. Chemical Dependents § 17.

Copyright (c) West Group 2002 No claim to original U.S. Govt. works

25 Am. Jur. 2d Drugs and Controlled Substances § 257 (1996)

Page 1

**\*82594 DRUGS AND
CONTROLLED SUBSTANCES
Mitchell Waldman, J.D.**

**VI. COMMITMENT AND
TREATMENT OF PERSONS
ABUSING, ADDICTED TO, OR
OTHERWISE DEPENDENT
UPON DRUGS [§§ 249-275]
B. ADMISSION AND
TREATMENT [§§ 252-265]
1. IN GENERAL [§§ 252-258]**

## § 257. Admission for treatment as affecting patient's rights; discrimination against substance abusers in admission or treatment

Go To Parallel Reference Table

Any addict or other person with a drug abuse or other drug dependence problem admitted for treatment may not thereby forfeit or abridge any of his rights as a citizen of the United States. (FN26)

Substance abusers who are suffering from medical conditions may not be discriminated against in admission or treatment solely because of their substance abuse by any private or public general hospital, or outpatient facility which receives support in any form from any program supported in whole or in part by funds appropriated to any federal department or agency. (FN27) The Secretary of Health and Human Services is required to issue regulations for the enforcement of the nondiscrimination policy, with respect to the admission and treatment of substance abusers in hospitals and outpatient facilities which receive support of any kind from any program administered by the Secretary. Such regulations must include procedures for determining, after opportunity for a hearing if requested, if a violation of the nondiscrimination provision (FN28) has occurred; notification of failure to comply with such provision; and opportunity for a violator to comply with the provision. (FN29) If the Secretary determines that a hospital or outpatient facility has violated the provision (FN30) and such violation continues after an opportunity has been afforded for compliance, the Secretary may suspend or revoke, after opportunity for a hearing, all or part of any support of any kind received by such hospital from any program administered by the Secretary. (FN31)

FN26. 42 USCA § 260(d).

FN27. 42 USCA § 290dd-1(a).

FN28. 42 USCA § 290dd-1(a).

Similar regulations were required to be prescribed by the Secretary of Veteran Affairs, acting through the Under Secretary for Health with regard to specified types of care to veterans suffering from substance abuse. 42 USCA § 290dd-1(b)(2).

**\*82595** FN29. 42 USCA § 290dd-1(b)(1).

FN30. 42 USCA § 290dd-1(a).

FN31. 42 USCA § 290dd-1(b)(1).

Copyright (c) West Group 2002 No claim to original U.S. Govt. works

DC CODE § 44-1203.01, Privatization of residential substance abuse treatment.                    **Page 1**

**\*28484 DC ST § 44-1203.01**

# DISTRICT OF COLUMBIA OFFICIAL CODE 2001 EDITION
## DIVISION VIII. GENERAL LAWS.
### TITLE 44. CHARITABLE AND CURATIVE INSTITUTIONS.
### SUBTITLE I. HEALTH RELATED INSTITUTIONS.
### CHAPTER 12. SUBSTANCE ABUSE TREATMENT AND PREVENTION.

*Current through October 2, 2001*

## § 44-1203.01. Privatization of residential substance abuse treatment.

(a) Notwithstanding any provision of § 44-1203, the Mayor shall contract out the operation of the substance abuse Residential Short Stay and Detoxification Facilities programs that are currently operated by the Addiction, Prevention, and Recovery Administration ("APRA") and, when appropriate, priority shall be given to locating such facilities on the campus of the D.C. General Hospital. The affected employees of APRA shall be given the opportunity to compete in this privatization, which shall be carried out in accordance with §§ 2-301.05b and 2-301.05c.

(b) Any amount of funding necessary for costs of severance pay related to the contracting out of the operation of the substance abuse Residential Short Stay and Detoxification Facilities program shall be paid from the administrative costs of the Addiction, Prevention, and Recovery Administration. No money for severance pay related to the contracting out shall be taken from any program funding allocated for substance abuse treatment services, including the $3 million increase allocated by the Council for community based substance abuse treatment services.

### CREDIT(S)

#### 2001 Main Volume

*(Mar. 15, 1990, D.C. Law 8-80, § 4a, 36 DCR 8469, as added Oct. 20, 1999, D.C. Law 13-38, § 1702, 46 DCR 6373.)*

<General Materials (GM) - References, Annotations, or Tables>

### HISTORICAL NOTES

### HISTORICAL AND STATUTORY NOTES

Emergency Act Amendments
For temporary (90-day) authorization of citation of section, see § 1701 of the Service Improvement and Fiscal Year 2000 Budget Support Emergency Act of 1999 (D.C. Act 13-110, July 28, 1999, 46 DCR 6320).

For temporary (90-day) addition of section, see § 1702 of the Service Improvement and Fiscal Year 2000 Budget Support Emergency Act of 1999 (D.C. Act 13-110, July 28, 1999, 46 DCR 6320).

Legislative History of Laws
Law 13-38, the "Service Improvement and Fiscal Year 2000 Budget Support Act of 1999," was introduced in Council and assigned Bill No. 13-161, which was referred to the Committee of the Whole. The Bill was adopted on first and second readings on May 11, 1999, and June 22, 1999, respectively. Signed by the Mayor on July 8, 1999, it was assigned Act No. 13-111 and transmitted to both Houses of Congress for its review. D.C. Law 13-38 became effective on October 20, 1999.

**\*28485 Miscellaneous Notes**
Section 1701 of D.C. Law 13-38 provides: "This title may be cited as the 'Substance Abuse Treatment and Prevention Amendment Act of 1999'."

Copyright (c) West Group 2002 No claim to original U.S. Govt. works

DC CODE § 32-1610, Use of funds for employment and training activities                Page 1

*23909 DC ST § 32-1610

# DISTRICT OF COLUMBIA OFFICIAL CODE 2001 EDITION DIVISION V. LOCAL BUSINESS AFFAIRS TITLE 32. LABOR. CHAPTER 16. WORKFORCE INVESTMENT IMPLEMENTATION.

*Current through October 2, 2001*

### § 32-1610. Use of funds for employment and training activities

(a) The Board shall advise the Mayor as required pursuant to section 112 of the Federal Act and on matters pertaining to the use of funds pursuant to section 134 of the Federal Act.

(b) As a part of the core services required by section 134(d)(2)(E)(i) of the Federal Act, the one-stop delivery system, as described in section 134(c) of the Federal Act, shall provide timely listings of all job opportunities and supportive services providers, consistent with this chapter, to a participant immediately upon application by the participant for services offered by the one-stop delivery system. In addition, core services shall include an initial assessment of aptitudes and abilities that is non-gender biased using tools that assess women's interest in high-wage employment that is nontraditional for women.

(c) Intensive services offered by the one-stop delivery system may include addiction recovery.

Consistent with this chapter, intensive services may also include short-term prevocational services that raise job seekers' basic reading, writing and computational skills to enable them to compete for jobs.

(d) The one stop delivery system shall provide a thorough assessment of job seekers' skills and employment barriers. If individuals are basic skills deficient or face other serious barriers to employment, such as a poor work history or long-term absence from the workforce, or TANF receipt, the one-stop operator shall determine that they are unable to obtain employment through core services.

(e) Consistent with this chapter, job seekers who are employed, but do not earn a self-sufficient wage, shall be eligible for intensive services.

(f) Any funds expended pursuant to this section shall be appropriated by the Council.

#### CREDIT(S)

##### 2001 Main Volume

*(July 18, 2000, D.C. Law 13-150, § 11, 47 DCR 4644.)*

<General Materials (GM) - References, Annotations, or Tables>

#### HISTORICAL NOTES

#### HISTORICAL AND STATUTORY NOTES

Legislative History of Laws
    For Law 13-150, see notes following § 32-1601.

Copyright (c) West Group 2002 No claim to original U.S. Govt. works

(7.)

## CERTIFICATE OF SERVICE

I, <u>Leona P. Bell</u>, certify the foregoing civil complaint was mailed post-
age pre-paid , on the ____day of <u>June</u>, 2002, to the following: The United
States District Court, 333 Constitution Avenue, N.W., Washington,D.C.,
20001.

_____

Ms. Leona P. Bell(Pro-se)
314  50th Street, N.E.  #23
Washington, D.C.  20019


## AFFIDAVIT

Ms. Leona P. Bell,
     Plaintiff,

     V.                                    Civil#_____

District Of Columbia,et. al.,
    Defendants.


1) I, Leona P. Bell, is over the age of 18 years of age.
2) All statements therein are true and correct to very best of my
   knowledge.
3) I am indigent without any finance to pay for the cost of these pro-
   cedures.
4) I was taken advantage of by those I entrusted with my care, and safe-
   ty; all statements are statements of facts.
5) I understand that there is a penalty for perjury, and I pray that the
   courts can render me equal protection in this instant civil matter.


_____

Ms. Leona P. Bell

273

HIPAA FORM 3

# GOVERNMENT OF THE DISTRICT OF COLUMBIA

## Department of Health

### Addiction Prevention and Recovery Administration

### Request for Release of Information / Authorization

__Purpose:__ To document verification of the identity and authority of a person or entity you wish to disclose protected health information.

☒ __Client__          ☐ __Third Party__          ☐ __Courts__          ☐ __Other_____

☐ __Payment:__   __Purpose is to obtain information regarding insurance coverage for substance abuse treatment that may be available under my insurance plan.__

Effective Date: _1/10/06_                    Expiration Date: __/  /__

__Section A:  Client Information.__                    Identification Number: _____

X Name: _Leona P Bell_

X Address: _314 50th St. N.E. #23_

X Telephone: _(202) 396 - 4213_   Fax: _____   E-mail: _____

Gender:   Male ☐      Female ☒          X DOB: _10, 30, 61_

Personal representatives signing on behalf of the individual must complete the following:

Personal Representative's Name: _____

Relationship to Individual: _____   Telephone: _____

__Section B: Recipient Information:__ (Name and Address (if known) of Person or Entity to whom the Protected Health Information is to be disclosed.)

Name: _____

Address: _____

Telephone: _____   Fax: _____   E-mail: _____

__Protected Health Information to be Disclosed:__   __pertinent medical information and rationale for discharge from program and to report results of re-entry committee decision to discharge program.__

__Purpose of the Disclosure:__  Describe the purpose for disclosing the protected health information, or attach a copy of any written request or information.

__To determine eligibility for re-entry for treatment__

_Kema Lee_
_Program assistant_
_202-535-1691_

3*3*3*

<u>Section C: Requester Information.</u>

Name: **Addiction Prevention & Recovery Administration**

Company, Organization or Government Agency with which the person claims affiliation:
**Re-entry Committee**

Address: **1300 First St, N.E., Ste 213**

Telephone: **202-535-1820**    Fax: **202 727-0092**    E- **Deborah.ford@dc.gov**

*Client's Name Sionia Bell*    *Date: 1-10-06* mail:

How did you verify the person's identity and relationship to the individual or to the company, organization or government agency?

<u>Repetitive Disclosure:</u>

☐    Check if this disclosure is one of a series of repetitive accountable disclosures for a single purpose to the same person or entity.

Staff Member Signature: _____    Date: _____

Print name: _____    Title: _____

Recommendation: _____

_____

<u>Section D: Release Authorization</u>

I understand that my records are protected under the federal regulations regarding Confidentiality of Alcohol and Drug Abuse Patient Records, 42CFR, Part 2, and cannot be disclosed without my written consent unless otherwise provided for in the regulations. I also understand that I may revoke this consent at any time except to the extent that action or actions have been taken in reliance on it, and that in any event, this consent expires automatically as follows:

(Give the date, and as need, the specifics of event or condition when this consent expires)

I authorize the Addiction Prevention and Recovery Administration (APRA) disclosure to the party as named in Section B: Requestor Information. I also understand that this information cannot be redisclosed without my written authorization.

The unauthorized disclosure of mental health information violates the provisions of the District of Columbia Mental Health Information Act of 1978. Disclosures may only be made pursuant to a valid authorization by the client, or as provided in titles III or IV of that Act. The Act provides for civil damages and criminal penalties for violations.

<u>Section E: Privacy Officer Approval</u>

Privacy Officer Signature: _____    Date: _____

Accept    ☐    Deny    ☐

Comments: _____

**YOU ARE ENTITLED TO A COPY OF THIS AUTHORIZATION AFTER YOU SIGN IT.**

**Include completed form in the individual's records.**
**Send a copy to the Assistant Privacy Officer and DOH Privacy Officer.**