UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                        )
LEONA P. BELL,                          )
                                        )
                    Plaintiff,          )
                                        )
        v.                              )        Civil Action No. 06-1092 (RJL)
                                        )
DISTRICT OF COLUMBIA, *et al*.          )
                                        )
                    Defendants.         )
_____)


DEFENDANTS' MOTION TO DISMISS OR,
IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

        Pursuant to Fed. R. Civ. P. 12(b)(6) and 56(b), defendants District of Columbia, Mayor

Anthony Williams, Bonita Bantom, "Joyce McKenzie," "Mr. Haliburton," William Jackson,

Michelle Danett, and Dr. John Bedeau (collectively, "the District") hereby move this Honorable

Court to dismiss the complaint based on plaintiff's failure to state a claim upon which relief can

be granted or, in the alternative, for summary judgment.

        The grounds and the reasons are set forth more fully in the accompanying Memorandum

of Points and Authorities and alternative proposed Orders. As required by LCvR 56.1, a

Statement of Material Facts As to Which There is No Genuine Issue has been provided.


DATE: December 5, 2006          Respectfully submitted,

                                EUGENE A. ADAMS
                                Interim Attorney General, D.C.

                                GEORGE C. VALENTINE
                                Deputy Attorney General, D.C.
                                Civil Litigation Division

      /s/ Ellen A. Efros
ELLEN A. EFROS, D.C. Bar No. 250746
Chief, Equity I
441 Fourth Street, N.W., 6th Floor South
Washington, D.C. 20001
Telephone: (202) 442-9886
Facsimile: (202) 727-0431
ellen.efros@dc.gov


      /s/ Andrew J. Saindon
ANDREW J. SAINDON, D.C. Bar No. 456987
Assistant Attorney General
Equity 1
441 Fourth Street, N.W., 6th Floor South
Washington, D.C. 20001
Telephone: (202) 724-6643
Facsimile: (202) 727-0431
andy.saindon@dc.gov


## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on December 5, 2006, redacted copies of the foregoing

Motion and all accompanying documents were filed with the Court's Electronic Case Filing system,

and sent by U.S. Mail, first-class, postage-prepaid, to:

    Leona P. Bell
    314 50th Street, N.E.
    No. 23
    Washington, D.C. 20019

Unredacted copies were filed under seal pursuant to LCvR 5.1(j), delivered to Chambers, and
sent to the above address.


      /s/ Andrew J. Saindon
ANDREW J. SAINDON, D.C. Bar No. 456987

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LEONA P. BELL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )      Civil Action No. 06-1092 (RJL) |
| | ) |
| DISTRICT OF COLUMBIA, *et al.* | ) |
| | ) |
| Defendants. | ) |
| | ) |

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS OR,
<u>IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT</u>

Defendants,[1] pursuant to Fed. R. Civ. P. 12(b)(6) and 56(b), have moved this Court to dismiss the complaint or, in the alternative, for summary judgment. This memorandum of points and authorities is provided in support of the defendants' dispositive motion in accordance with LCvR 7(a). As required by LCvR 56.1, a Statement of Material Facts As to Which There is No Genuine Issue ("SMF") has been provided.

The Court should dismiss the Complaint because plaintiff's claims are substantively meritless.[2] Plaintiff does not have a constitutional "right to a meaningful addiction treatment recovery." Complaint at 4.

---

[1]      Plaintiff has named as defendants in this case the District of Columbia, Mayor Anthony Williams, Bonita Bantom, "Joyce McKenzie," "Mr. Haliburton," William Jackson, Michelle Danett, and Dr. John Bedeau (collectively, "the District"). Mayor Williams is named in his official capacity only, while the other individual defendants are named individually and in their official capacities. The defendants, by this filing, do not concede that any defendant was properly served.

[2]      "In cases filed *in forma pauperis*, 28 U.S.C. § 1915(d) authorizes district courts to dismiss *sua sponte* complaints presenting 'indisputably meritless legal theor[ies].'" *Best v. Kelly,*

Plaintiff's vague and unsubstantiated allegations about discriminatory treatment do not make out a federal claim; there are *no* material facts at issue which may impede a decision on the straight-forward legal questions in dispute.

## I. Factual and Procedural Background

Plaintiff alleges that she was improperly "terminated" from a substance-abuse program run by the Addiction Prevention and Recovery Administration ("APRA") of the D.C. Department of Health ("DOH"). Complaint 1–2. She alleges that she was "forced out of treatment," after a hearing, on "false statements, and speculations," in violation of the Americans with Disabilities Act. *Id.* ¶¶ 2–3.

Plaintiff also alleges "differential" treatment as compared to other clients/patients "for the same alleged offense," which she asserts is a violation of her equal protection rights *Id.* ¶¶ 6–7. Plaintiff claims that she was improperly denied "benefits and services" under local law. *Id.* ¶ 9. Plaintiff asserts claims under 42 U.S.C. § 1983 and various constitutional provisions, including Equal Protection and Due Process. *Id.* at 3.

On November 29, 2005, [************************************************ *********REDACTED******************************************************]. Declaration of Bonita M. Bantom ("Bantom Decl."), dated November 16, 2006, ¶ 8 (copy attached); SMF ¶ 1.

---

39 F.3d 328, 331 n.4 (D.C. Cir. 1994) (quoting *Neitze v. Williams*, 490 U.S. 319, 327 (1989)); *Anyanwutaku v. Moore*, 151 F.3d 1053, 1059 (D.C. Cir. 1998) (same). Of course, complaints may be dismissed *sua sponte* under Rule 12(b)(6) when it appears that "the plaintiff cannot possibly win relief." *Baker v. Director, U.S. Parole Comm'n*, 916 F.2d 725, 726 (D.C. Cir. 1990) (*per curiam*).

[*********************REDACTED*****************************].  Bantom Decl. ¶ 8; SMF ¶ 2. [*****************************************************************REDACTED**********************************]. Bantom Decl. ¶ 8; SMF ¶ 2.

[************************REDACTED************************************************]. Bantom Decl. ¶ 9; SMF ¶ 3. [*************************************************************************REDACTED****************************************************************************]. Bantom Decl. ¶ 9; SMF ¶ 3. She was also advised that her suspension was for 180 days, after which she could return to the program. Bantom Decl. ¶ 9; SMF ¶ 3.

[***********************************************REDACTED***************************************************************************************************]. Bantom Decl. ¶ 10; SMF ¶ 4.

[***************************************REDACTED************************************]. Bantom Decl. ¶ 11; SMF ¶ 5. [*******************************************************REDACTED*******************************************************************************************************]. Bantom Decl. ¶ 11; SMF ¶ 5.

[*******************************************REDACTED***************************************************************************************]. Bantom Decl. ¶ 12; SMF ¶ 6.


II. <u>Argument</u>

In evaluating a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted, a court must accept the allegations in the complaint as

true. *See*, *e.g.*, *Croixland Properties Ltd. Partnership v. Corcoran*, 174 F.3d 213, 215 (D.C. Cir. 1999). All reasonable inferences must be drawn in favor of the plaintiff, and a court should only dismiss a complaint for failure to state a claim "'if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" *Id.* (*quoting Hishon v. King & Spaulding*, 467 U.S. 69, 73 (1984)); *see also Price v. Crestar Secs. Corp.*, 44 F. Supp. 2d 351, 353 (D.D.C. 1999).

In a Rule 12(b)(6) analysis, while the complaint is to be construed liberally, courts "need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint. Nor must the court accept the legal conclusions cast in the form of factual allegations." *Kowal v. MCI Communications Corp., Inc.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994) (*citing Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Moreover, while the court "must assume the truth of all statements proffered by the party opposing summary judgment," it need not consider wholly conclusory statements for which no supporting evidence is offered. *Greene v. Dalton*, 164 F.3d 671, 674–75 (D.C. Cir. 1999).

It is insufficient, to avoid summary judgment, that some factual issues remain in the case; an issue must be both *genuine* and *material* to preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–248 (1986).

If a court considers materials outside the pleadings in a ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court must convert the motion to dismiss into a motion for summary judgment. Fed. R. Civ. P. 12(b); *see also Haase v. Sessions*, 835 F.2d 902, 905–906 (D.C. Cir. 1987).

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A "complete failure of proof concerning an essential element of the non-moving party's case necessarily renders other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Complaints filed without the assistance of counsel are held to "less stringent standards than formal pleadings drafted by lawyers." *Williams v. Moore*, 899 F.Supp. 711, 712 (D.D.C. 1995) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). However, "a *pro se* complaint, like any other, must present a claim upon which relief can be granted by the court." *Williams*, 899 F.Supp. at 712 (quoting *Henthorn v. Department of the Navy*, 29 F.3d 682, 684 (D.C. Cir. 1994)).

All of the allegations in the Complaint fail as a matter of law. No factual development can resuscitate them. What plaintiff claims is a breach of her constitutional rights is nothing more than an ordinary administrative dispute.

Whatever the perceived flaws of the District's actions, they are not of a constitutional dimension.


A.    *Plaintiff Was Not Deprived of Substantive Due Process.*

The first step in any due process analysis is "to determine whether constitutional safeguards apply at all, *i.e.*, whether a private party has a property or liberty interest that triggers Fifth Amendment due process protection." *Reeve Aleutian Airways, Inc. v. U.S.*, 982 F.2d 594 (D.C. Cir. 1993) (*citing Cleveland Bd. of Education v Loudermill*, 470 U.S. 532, 538–41 (1985)). *See also Bloch v. Powell*, 348 F.3d 1060, 1068 (D.C. Cir. 2003) (to have a property interest in a government benefit, "a person clearly must have more than an abstract need or desire for it. He

must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.") (*quoting Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972)).

This Circuit has made it clear that substantive due process "normally imposes only very slight burdens on the government to justify its actions . . . ." *George Washington Univ. v. District of Columbia*, 318 F.3d 203, 206 (D.C. Cir. 2003). In fact, in the absence of a protected liberty or property interest, there can be no substantive due process violation. *Id*. (*citing Roth*, 408 U.S. at 569–70).

1. There Is No Protected Property Interest Involved Here.

Access to substance-abuse treatment is not a "fundamental right" (like those related to marriage, family, procreation, and bodily integrity) such that it may not be deprived regardless of the procedures used. *See Beo v. District of Columbia*, 44 F.3d 1026, 1028 (D.C. Cir. 1995) (citing *Albright v. Oliver*, 510 U.S. 266 (1994)).

The Circuit has recently indicated that, if statutes or regulations place substantial limits on the government's exercise of its discretion in conferring a "benefit," an applicant may have a property interest. *GWU*, 318 F.3d at 207–209. In *GWU*, the Circuit found that there were "substantial limits" on the District's discretion to issue a land-use permit. *GWU*, 318 F.3d at 208 ("special exceptions must be issued as a matter of right *if the qualifying criteria are met*.") (emphasis added).

Here, in contrast, there are no such "substantial limits" on the District's discretion to provide addiction-recovery services, and hence plaintiff had no property interest in continuing with the program.

The local program at issue here, the Drug Treatment Choice Program, was established "to provide District residents with access to substance abuse rehabilitation and aftercare plans . . . ." D.C. Official Code § 7-3003 (2005 Supp.). *See also* Complaint ¶ 9. The law grants extensive authority to DOH and APRA to administer the program by, *e.g.*, promulgating administrative regulations, *Id.*, § 7-3015, "[c]reating standardized intake forms and procedures" and in "[d]etermining whether the applicant is eligible to participate in the Program following the intake screening and assessment . . . ." *Id.*, § 7-3005. "[DOH] shall determine eligibility for participation in the [program] at the conclusion of the intake and assessment process." 29 D.C. Mun. Reg. § 2403.2.

The program's regulations do not mandate the acceptance of anyone into the program, only that District residents have "access" to such services; indeed, the regulations explicitly disavow an entitlement to the program's services. *Id.* at § 2400.2. *See also id.* at § 2405.4 ("Nothing in this chapter shall be construed to create an entitlement to substance abuse treatment during any fiscal year.").

The regulations provide that applicants for services "shall receive the standardized clinical intake screening and assessment necessary to determine eligibility for substance abuse treatment . . . ." *Id.*, § 2400.3. The regulations also indicate that applicants "shall participate in an eligibility determination process" and can demonstrate eligibility by providing proof of District residency (and maintaining it while receiving treatment), and a lack of insurance and ability to pay for the services. *Id.*, § 2405.1.

Even in the context of prisoners' rights, where the government is constitutionally *obliged* to provide some level of medical care, the law is clear that there is no liberty interest in participation in a drug-treatment program. *See, e.g., Williams v. Moore*, 899 F.Supp. 711, 714 (D.D.C. 1995) (citing, *inter alia*, *Pryor-El v. Kelly*, 892 F.Supp. 261 (D.D.C. 1995) (plaintiff prisoner failed to state

an equal protection claim where he allegedly was denied an opportunity to participate in a drug-treatment program)). If the governing statutory or regulatory language does not limit government officials' discretion to confer such a "benefit," no liberty interest is created. *Meachum v. Fano*, 427 U.S. 215, 224–26 (1976). *Cf. Sandin v. Conner*, 515 U.S. 472, 483–84 (1995) (to determine if there is a liberty interest, courts should focus less on the language of specific regulations and more on the nature of the interest at stake) (citing, *inter alia*, *Meachum*).

The law at issue here "does not contain the kind of explicit mandatory language limiting official discretion that would give rise to a protected interest" for plaintiff in the drug-treatment program. *Williams*, 899 F.Supp. at 714.

As shown, the District possesses considerable discretion to determine who to admit to the program and how to run the program, notwithstanding an express disavowal of creation of an entitlement. Because of this significant discretion, plaintiff cannot have a reasonable expectation of an entitlement to the continued receipt of services.

2. Even Assuming a Protected Property Interest, The District's Conduct Here Was Reasonable.

"Once a property interest is found, however, the doctrine of substantive due process constrains only egregious government misconduct." *GWU*, 318 F.3d at 209 (*citing Silverman v. Barry*, 845 F.2d 1072, 1080 (D.C. Cir. 1988) (doctrine prevents only "grave unfairness"), *cert. denied*, 488 U.S. 956 (1988)); *Yates v. District of Columbia*, 324 F.3d 724, 725 (D.C. Cir. 2003) (*per curiam*).[3]

---

[3]      *Silverman* identified two ways by which plaintiffs might show such unfairness: "a substantial infringement of state law prompted by personal or group animus, or a deliberate flouting of the law that trammels significant personal or property rights . . . ." *Silverman*, 845 F.2d at 1080. *See also George Washington Univ.*, 318 F.3d at 209 (*quoting Silverman*).

In assessing the conduct of the District in this case against the substantive component of due process, "the threshold question is whether the behavior . . . [was] so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *County of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998). Plaintiff cannot make such a dramatic showing.

In this Circuit, a substantive due process claim is limited "to actions that in their totality are genuinely drastic." *Tri County Industries, Inc. v. District of Columbia*, 104 F.3d 455, 459 (D.C. Cir. 1997). The District's action here falls far short of this standard, which is regularly reaffirmed by the Supreme Court. *See, e.g., City of Cuyahoga Falls v. Buckeye Community Hope Found.*, 538 U.S. 188 (2003) (unanimous decision) ("[O]nly the most egregious official conduct can be said to be 'arbitrary in the constitutional sense.'" (*quoting County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)). Plaintiff cannot show such misconduct here.

Moreover, even if plaintiff demonstrates that APRA violated local law by improperly terminating her from the program, "a breach of local law does not of itself violate substantive due process." *GWU*, 318 F.3d at 210 (*citing Tri County*, 104 F.3d at 459).

Plaintiff's substantive due process claims must be dismissed.


B.      *Plaintiff Has Not Been Denied Procedural Due Process.*

Plaintiff has not been deprived of *any* constitutionally protected rights. Plaintiff can point to no "entitlement" of which she have been denied without due process. *See Tri County*, 104 F.3d at 460 (in procedural due process analysis, "the central issue is the adequacy not of [the agency director's] facts but of the *process* that he purported to follow.").

> It is clear that state law which generates a legitimate claim of entitlement can create an interest the deprivation of which triggers application of the Due Process Clause. It is equally clear, however, that state-created *procedures* do not create such an entitlement where none would otherwise exist. "Process is not an end in itself. Its

> constitutional purpose is to protect a substantive interest to which the individual has
> a legitimate claim of entitlement."

*Doe by Fein v. District of Columbia*, 93 F.3d 861, 868 (D.C. Cir. 1996) (*per curiam*) (emphasis in

original) (*quoting Olim v. Wakinekona*, 461 U.S. 238, 250–51 (1983) (further citations omitted)).

Thus, to the extent that plaintiff claims a right to a District-of-Columbia-created procedure,

the deprivation of that "right" is not of constitutional dimension, if (as the District asserts above),

plaintiff has no property or liberty interest at stake independent of that claimed procedure.

Assertion of a procedural due process claim requires a plaintiff to identify the process that is

due. *Doe by Fein*, 93 F.3d at 869–70. Plaintiff has failed to do this, vaguely asserting only that

"plaintiff was not given a chance to express herself or documents of elements of evidence of

plaintiff's case." Complaint ¶ 1.

Even if plaintiff shows that the District did not comply with its *own* procedures, that fact

alone is insufficient—as a matter of law—to constitute a due process violation. *See Duckett v.

Quick*, 282 F.3d 844, 848 (D.C. Cir. 2002) (although "obvious" that agency failed to comply

with D.C. regulations, due process was not violated thereby) (citing *Brandon v. District of

Columbia Bd. of Parole*, 823 F.2d 644, 648–49 (D.C. Cir. 1987) (state does not violate

individual's due process rights by deviating from its own procedures; "state procedural law

requirements must be enforced in state courts under state law")).

Plaintiff is incorrect; the record indicates that plaintiff had at least one hearing [*******

***********************************REDACTED*****************************

**********************************], at which she testified. Complaint ¶¶ 1, 3, 6;

Exhibit to the Complaint at pp. 5, 7 (of 33); Bantom Decl. ¶ 8; SMF ¶ 3.[4] Moreover, [*******

---

[4]    Plaintiff's exhibits confirm that there was a hearing on November 29, 2005 (p. 5 of 33), and another one on January 27, 2006 (p. 7 of 33).

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*REDACTED\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*].

Bantom Decl. ¶ 11; SMF ¶ 5. Such a result satisfies due process.

> Although the procedure provided was not extensive as plaintiff would have liked, and while plaintiff disagrees with the facts and law upon which the District relied . . . the District gave [plaintiff] sufficient notice and opportunity to be heard at a meaningful time and in a meaningful manner, which is all that due process requires.

*American Towers*, 146 F.Supp.2d 27, 33 (D.D.C. 2001), *aff'd without opinion*, 50 Fed. Appx. 448 (D.C. Cir. 2002).

If local government "makes ordinary judicial process available to respondent for resolving its . . . dispute, that process is due process." *Lujan v. G & G Fire Sprinklers, Inc.*, 532 U.S. 189, 197 (2001) (unanimous decision). Any procedural violation here does not in itself violate the Constitution or create any interest for plaintiff under the Due Process Clause.

Plaintiff's due process claims must be dismissed.


C.    *Plaintiff Has Not Been Deprived of Equal Protection.*

To survive an equal protection challenge, official government action need only bear a rational relationship to a legitimate government interest, so long as no fundamental rights or suspect classifications are implicated. *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439–40 (1985).

The rational basis inquiry is "highly deferential," *Calloway v. District of Columbi*a, 216 F.3d 1, 9 (D.C. Cir. 2000), and "is not a license for courts to judge the wisdom, fairness, or logic of legislative choices." *Heller v. Doe*, 509 U.S. 312, 320 (1993).

Plaintiff alleges that the District has treated her differently than other "clients/patients." Complaint ¶ 6.

Equal protection "is essentially a direction that all persons similarly situated should be treated alike." *Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439 (1985). Plaintiff has clearly failed the initial hurdle in any equal protection claim—showing that any other clients/patients are similarly situated.

To the extent plaintiff claims she was "singled out" for enforcement, the allegation cannot stand. Plaintiff's claim is thus akin to one for "selective prosecution," and it is well-established that a plaintiff bringing a selective prosecution claim carries a heavy burden, as discussed *infra*. "Government enforcement actions are entitled to the presumption that they are carried out with regularity and in good faith." *Branch Ministries, Inc. v. Richardson*, 970 F.Supp. 11, 15 (D.D.C. 1997). Selectivity, alone, does not render uneven enforcement unconstitutional; to so demonstrate, plaintiff must show that the selectivity was "improperly motivated." *Id. See also Brandon v. District of Columbia Bd. of Parole*, 823 F.2d 644, 650 (D.C. Cir. 1987) ("Not every divergence in the application [of] a law gives rise to an equal protection claim.") (citation omitted).

To make out a claim for a denial of equal protection in these circumstances, plaintiff would have to show "an element of intentional or purposeful discrimination." *Pryor-El*, 892 F.Supp. at 269 (quoting *Snowden v. Hughes*, 321 U.S. 1, 8 (1944)). Plaintiff cannot make such a showing, and has not alleged facts sufficient to continue.

Because there is no fundamental right or suspect class at issue here, an "as applied" equal protection challenge, plaintiff must first prove that similarly situated individuals were treated differently. *See Steffan v. Perry*, 41 F.3d 677, 695 (D.C. Cir. 1994) (*en banc*) ("[I]n making an as-applied challenge, it is [plaintiff's] burden . . . to show exactly how the [regulations] were applied against him illegally.").

Even if plaintiff makes that showing, however, "the government may avoid violating equal protection principles if it can demonstrate that its reasons for treating an individual differently bear some rational relationship to a legitimate state purpose." *Brandon*, 823 F.2d at 650.

Plaintiff cannot meet her "heavy burden of proof." *United States v. Grace*, 778 F.2d 818, 822 & n.7 (D.C. Cir. 1985).[5] *See also Pryor-El*, 892 F.Supp. at 270 (equal protection claim dismissed where plaintiff "only baldly asserts that he was treated differently than other[s]" and fails to allege "a constitutionally impermissible motive" for that treatment).

Plaintiff's equal protection claims must be dismissed.

D.    *Plaintiff Cannot Establish Municipal Liability Under 42 U.S.C. § 1983.*

To hold the District liable under 42 U.S.C. 1983, a plaintiff must show that the District implemented or executed a policy or custom that causes the deprivation of plaintiff's constitutional rights. *Monell v. Dept. of Social Svcs*, 436 U.S. 658, 690–91 (1978); *Rogala v. District of Columbia*, 161 F.3d 44, 56 (D.C. Cir. 1998) (*per curiam*). Plaintiff thus has the burden of proving (1) that she was deprived of constitutional rights, and (2) that the deprivation was caused by a policy or custom of the District. *Warren v. District of Columbia*, 353 F.3d 36, 38 (citing *Collins v. City of Harker Heights*, 503 U.S. 115, 123–24 (1992)).

---

[5]    A party seeking to prove selective prosecution must make a *prima facie* showing both that others similarly situated were not prosecuted, *and* that the selective prosecution being complained of was improperly motivated, *i.e.*, it was based on an impermissible consideration such as race or on a desire to prevent the exercise of constitutional rights. *Id*. (*citing, inter alia, Wayte v. United States*, 470 U.S. 598 (1985)). *See also Branch Ministries, Inc. v. Rossotti*, 40 F.Supp.2d 15, 21 (D.D.C. 1999) (same). Plaintiff has not alleged—and cannot show—either of these elements.

Plaintiff has not alleged (and cannot prove) these two elements. Notwithstanding that substance-abuse treatment, important though it is, is not a constitutional "right," plaintiff's suspension from the program was proper, and not an impermissible "policy" of the District.

While controlling case law does not require a plaintiff to "plead law or match facts to every element of a legal theory," *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1115 (D.C. Cir. 2000), a complaint must "include some factual basis for the allegation of a municipal policy or custom." *Atchison v. District of Columbia*, 73 F.3d 418, 422 (D.C. Cir. 1996).

Plaintiff has failed to meet her burden.

Notwithstanding this fatal deficiency, if the government officials alleged to have committed the constitutional violations lack "final policymaking authority," their mere exercise of discretion, not in service of any municipally established policy, is insufficient to render the District liable. *Triplett v. District of Columbia*, 108 F.3d 1450, 1453 (D.C. Cir. 1997) (*quoting Jett v. Dallas Indep. School Dist.*, 491 U.S. 701, 737 (1989)).

Plaintiff cannot meet this high burden. Plaintiff has not alleged—and cannot prove—that the individually named defendants were such "policymaking" officials. Those defendants were merely enforcing regulations and reasonable program policies; there is no "municipally established policy" to deprive plaintiff of her constitutional rights.

Furthermore, plaintiff must show a course deliberately pursued by the District, as opposed to an action taken unilaterally by nonpolicymaking employees, and "an affirmative link between the [District's] policy and the particular constitutional violation alleged." *Carter v. District of Columbia*, 795 F.2d 116, 122 (D.C. Cir. 1986) (*quoting Oklahoma City v. Tuttle*, 473 U.S. 925 (1985) (plurality opinion)). For liability to attach to the District, plaintiff must provide specific and detailed evidence of a continuing policy or pattern of unconstitutional conduct that

was either condoned or deliberately ignored by the District. *Daskalea*, 227 F.3d at 441–42; *Carter*, 795 F.2d at 125–26 (plaintiffs must prove "a persistent, pervasive practice, attributable to a course deliberately pursued by official policy-makers, one that caused the deprivation of constitutional rights plaintiffs [allegedly] experienced."). Evidence of a single incident is not sufficient to show the existence of a policy or pattern. *See Parker v. District of Columbia*, 850 F.2d 708, 712 (D.C. Cir. 1988); *Byrd v. District of Columbia*, 297 F.Supp.2d 136, 139 (D.D.C. 2003) (plaintiff's evidence did not stand up to "the level of exacting proof demanded by . . . this Circuit . . . .").

Plaintiff cannot meet the difficult burden established by case law. Merely invoking the § 1983 buzzwords of "policy" and "custom" is not sufficient to demonstrate an actual District practice. Plaintiff's claims under 42 U.S.C. § 1983 must be dismissed.


   E. *The Individual Defendants Are Shielded from Liability by Qualified Immunity.*

It is well-established that qualified immunity shields government officials from liability for civil damages. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). *See also Farmer v. Moritsugu*, 163 F.3d 610, 613 (D.C. Cir. 1998).

Where an official's conduct is objectively reasonable in light of existing law, that official will enjoy protection from liability. *See Anderson v. Creighton*, 483 U.S. 635, 639 (1987).

Qualified immunity "protects government officials from [personal] liability from civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *International Action Center v. United States*, 365 F.3d 20, 24 (D.C. Cir. 2004) (quoting *Harlow*, 457 U.S. at 818).

"Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

Here, as demonstrated, there is no federal "right" to substance-abuse treatment, hence the individual defendants are entitled to qualified immunity.

A court evaluating a claim of qualified immunity must first determine whether plaintiff has alleged the deprivation of an actual constitutional right and, if so, proceed to determine whether that right was clearly established at the time of the alleged violation. *Stewart v. Evans*, 351 F.3d 1239, 1243 (D.C. Cir. 2003) (*quoting Wilson v. Layne*, 526 U.S. 603, 609 (1999)). Questions of qualified immunity should be resolved "at the earliest possible stage of the litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

Here, as noted above, there is no constitutional "right" to drug-addiction treatment. Plaintiff's allegations do not state a cognizable claim of any constitutional wrongdoing by any of the defendants.

The individual defendants here are protected by qualified immunity unless the plaintiff's allegations could sustain a finding that their conduct violated clearly established law. *See Harlow*, 457 U.S. at 818.

Plaintiff has utterly failed to allege, much less demonstrate, that the individual defendants' conduct was objectively "unreasonable" in light of existing law. Consequently, the individual defendants are entitled to protection from liability. *See Anderson*, 483 U.S. at 639.

A reasonable official in defendants' situation could have believed that their conduct did not violate plaintiff's constitutional rights. Because the individual defendants' conduct did not violate a

clearly established law of which a reasonable official would have known, they are entitled to qualified immunity from plaintiff's section 1983 claim.

Finally, the District asserts that exposing defendants to personal liability in these circumstances would be at odds with the policies underlying the doctrine of qualified immunity. *See Harlow*, 457 U.S. at 806, 814. The risk of personal liability would make it virtually impossible for governments to fill positions such as those occupied by the individual defendants here, as few qualified persons would be willing to assume this responsibility with the accompanying risks of liability. The District cannot be expected to operate in this way, and government officials should not be expected to assume this type of liability. *See Farmer*, 163 F.3d at 616.

Plaintiff's claims against the individual defendants should be dismissed.


F.    *Plaintiff Cannot Qualify for Punitive Damages Against the Defendants.*

The Supreme Court has held that punitive damages may not, as a matter of law, be awarded against municipalities under § 1983. *City of Newport v. Fact Concerts*, 453 U.S. 247, 267 (1981). The Court reasoned that punitive damages awards against municipalities are at odds with the purposes of section 1983:

> Punitive damages by definition are not intended to compensate the injured party, but rather to punish the tortfeasor whose wrongful action was intentional or malicious, and to deter him and others from similar extreme conduct. Regarding retribution, it remains true that an award of punitive damages against a municipality "punishes" only the taxpayers, who took no part in the commission of the tort. These damages are assessed over and above the amount necessary to compensate the injured party. Thus, there is no question here of equitably distributing the losses resulting from official misconduct. Indeed, punitive damages imposed on a municipality are in effect a windfall to a fully compensated plaintiff, and are likely accompanied by an increase in taxes or a reduction of public services for the citizens footing the bill. Neither reason nor

justice suggests that such retribution should be visited upon the shoulders of blameless or unknowing taxpayers.

*Id.*, 453 U.S. at 267 (internal citations and footnote omitted).

In the case of *Daskalea v. District of Columbia*, 227 F.3d 433 (D.C. Cir. 2000), a female former prisoner alleged that she suffered a continuing course of sexual abuse at the hands of correctional officers. *Id.*, 227 F.3d at 436. The Court upheld the jury's award of compensatory damages, but stated flatly: "We are unable, however, to uphold the jury's punitive damages award because District of Columbia law bars the imposition of such awards against the District." *Id*. The Court acknowledged that while there may be some "extraordinary" cases which would justify the imposition of punitive damages against the District, the D.C. Court of Appeals has never permitted such an award. *Id*., 227 F.3d at 446. "Even if the D.C. Court of Appeals would permit punitive damages in some not-yet-presented category of "extraordinary" cases, we are unable to conclude that this case would fit within that category." *Id*., 227 F.3d at 447. *See also Butera v. District of Columbia*, 235 F.3d 637, 658 (D.C. Cir. 2001) ("*Daskalea* bars the award of punitive damages against the District of Columbia.").

Thus, while it is theoretically possible that punitive damages could be awarded against the District, it has never been done before and a plaintiff would have to prove that an unconstitutional "policy" perpetrated by the District's taxpayers or intentionally adopted by District officials directly caused plaintiff's injuries. Plaintiff has not even proffered the "extraordinary circumstances" necessary to support such a claim. The defendants assert that the routine circumstances of this case do not rise to the level necessary for an award of punitive damages against the District.

Punitive damages are available in a § 1983 action against *individual* defendants only when the defendants' conduct is shown to be a result of "evil motive or intent, or when it

involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983).

The defendants assert that in the instant case, plaintiff can prove no set of facts to support the imposition of punitive damages against the individual defendants. There is not a scintilla of evidence to suggest that, even if a tort can be proven, the defendants here possessed the necessary state of mind according to *Butera*. The punitive damages claims must be dismissed.

G.      *Plaintiff Has Failed to State a Claim Under the ADA.*

The Americans with Disabilities Act ("ADA") prohibits discrimination by public entities against qualified individuals on the basis of disability in the provision of or access to public services or programs. 42 U.S.C. § 12132.

The District of Columbia and its agencies are "public entities" within the meaning of the ADA. *See Galloway v. District of Columbia*, 816 F.Supp. 12, 19 (D.D.C. 1993) (citing 42 U.S.C. § 12131(1)). *See also Breen v. Dep't of Transportation*, 282 F.3d 839, 841 (D.C. Cir. 2002) (cases interpreting the term "disability" and otherwise determining liability employ the same standards under both the ADA and the Rehabilitation Act, 29 U.S.C. § 701 *et seq*.).

To state a claim here, plaintiff must show that she was discriminated against solely by reason of her handicap. *R.S. v. District of Columbia*, 292 F.Supp.2d 23, 28 (D.D.C. 2003) (citing *Walker v. District of Columbia*, 969 F.Supp. 794, 797 (D.D.C. 1997)).

This plaintiff cannot do; plaintiff was not suspended from the addiction-treatment program *because of* her addiction, but because of her violation of the program's rules. Logically, the defendants could not have discriminated against plaintiff on the basis of her alleged disability, because that condition is the reason plaintiff was offered services in the first place. *See*

*Tressler v. Pyramid Healthcare, Inc.*, 422 F.Supp.2d 514, 520 (D. Pa. 2006) (plaintiff failed to state a claim for discrimination where he could not show he was denied admission to addiction-treatment facility solely because of his blindness; plaintiff was not "otherwise qualified" for admission because clinic was not legally authorized to provide the level of care he sought).

In an ADA claim where, as here, there is no direct evidence of discrimination, plaintiff has the initial burden of proving by a preponderance of the evidence a *prima facie* case of discrimination. *Duncan v. WMATA*, 240 F.3d 1110, 1114 (D.C. Cir. 2001) (*en banc*).

Plaintiff's ADA claim fails because she has not alleged facts sufficient to support the inference that she is a "qualified person" under the ADA. *See* 42 U.S.C. 12131(2) (defining "qualified individuals" as persons with disabilities who "mee[t] the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.").

In other words, even assuming that the condition implied in the Complaint—drug addiction—is a disability, plaintiff has failed to allege that she was otherwise qualified for the receipt of the substance-abuse treatment services from which she was suspended. *Cf.* 42 U.S.C. § 12114(a) ("the term 'qualified individual with a disability' shall not include any [person] who is currently engaging in the illegal use of drugs . . . .") and 42 U.S.C. § 12114(b)(1)–(2) (a person who has "successfully completed a supervised drug rehabilitation program and is no longer engaging in the illegal use of drugs" or is "participating in a supervised rehabilitation program and is no longer engaging in such use" may be a qualified individual with a disability).

The record demonstrates that plaintiff was suspended from the program for violating its rules. Bantom Decl. ¶¶ 8–11; SMF ¶¶ 2–5. Plaintiff's nascent ADA claim must fail. *See Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 602–603 (1999) (in ADA claims, government

generally may rely on the reasonable assessments of its own professionals in determining whether an individual meets the essential eligibility requirements).

### III. Conclusion

The defendants' actions here, even if proven, did not violate any of the fundamental principles of the Constitution.

For the foregoing reasons, the defendants move to dismiss the complaint. A proposed Order is attached hereto.

DATE: December 5, 2006          Respectfully submitted,

EUGENE A. ADAMS
Interim Attorney General, D.C.

GEORGE C. VALENTINE
Deputy Attorney General, D.C.
Civil Litigation Division


      /s/ Ellen A. Efros
ELLEN A. EFROS, D.C. Bar No. 250746
Acting Chief, Equity I
441 Fourth Street, N.W., 6th Floor South
Washington, D.C. 20001
Telephone: (202) 724-6635
Facsimile: (202) 727-0431
ellen.efros@dc.gov


      /s/ Andrew J. Saindon
ANDREW J. SAINDON, D.C. Bar No. 456987
Assistant Attorney General
Equity 1
441 Fourth Street, N.W., 6th Floor South
Washington, D.C. 20001
Telephone: (202) 724-6643
Facsimile: (202) 727-0431
andy.saindon@dc.gov